IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ÁNGEL L. ORTIZ-RIVERA,

Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant

CIVIL 04-2021 (HL)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On September 27, 2005, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits. The defendant filed a memorandum in support of the final decision on March 18, 2005, (Docket No. 10), and plaintiff filed a memorandum against such final decision on June 16, 2005. (Docket No. 13.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before June 30, 2002, when he last met the earnings requirements for disability benefits under the Social Security Act. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, the administrative law judge entered the following findings:

    1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in

CIVIL 04-2021 (HL)                                 2

        Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2002.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
7. The claimant has the following residual functional capacity: lift and carry a maximum of 20 pounds and 10 pounds frequently, sit for 6 hours and stand and walk for 2 hours and to otherwise function normally in activities not requiring the use of foot pedals or performance of complex tasks.
8. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).
9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).
10. The claimant has "a limited education" (20 CFR § 404.1564).
11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).
12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).
13. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as garment folder, final inspector and garment inspector.
14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

Tr. at 7-8.

     Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of disability requires that plaintiff be unable to perform any substantial

CIVIL 04-2021 (HL)                             3

gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986). Partial disability does not qualify a claimant for benefits. See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The administrative law judge noted in his rationale that the plaintiff has lumbar spondylosis, a herniated disc and an unspecified depressive disorder, severe impairments within the meaning of the Regulations. (Tr. at 24.) The administrative law judge noted that the medical evidence did not show significant limitations in the range of motion of major joints, nor were there marked degenerative changes in the X-ray or MRI examinations. The judge concluded that there are some limitations in plaintiff's physical residual functional capacity but that he could still perform a significant range of light work. He also noted that while depressed and anxious, plaintiff was still well oriented, logical and coherent. (Tr. at 24.) Even with the mental limitations, plaintiff was found to be able to carry out simple instructions and maintain a regular work schedule. (Tr. at 25.) Notwithstanding plaintiff's complaints, the administrative law judge found that there were jobs in the national economy which plaintiff could perform. (Tr. at 26.)

The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work he has performed in the past due to a severe impairment or combination of

CIVIL 04-2021 (HL)                        4

impairments. The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot, a finding of disability will follow. See 20 C.F.R. § 404.1520(f). At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors. See Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lancelotta v. Sec'y of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986); Vázquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982).

Plaintiff fell from a scaffolding in 1997 and was seen by the State Insurance Fund. On January 30, 1998, an X-ray of the cervical spine was negative. A CT scan dated February 25, 1998 revealed lumbar spondylosis, and an MRI dated June 29, 1998 revealed left paracentral L3-L4 disc protrusion, producing a stenosis of the spinal canal, disc thinning and degeneration at L2-L3 and L4-L5. Lumbosacal strain was diagnosed. S1 radiculopathy was revealed through an electromyogram of November 16, 1999.

A consultative neurological evaluation by Dr. Samuel Méndez dated January 21, 2000, revealed a diagnosis of chronic lumbalgia, suspected spondylosis and lumbosacral syndrome. (Tr. at 330-36.) Another consultative neurological evaluation dated September 26, 2000, by Dr. Alfredo Pérez Canabal, resulted in a diagnosis of lumbosacral radiculopathy and chronic low back pain. (Tr. at 381-387.) A then current physical residual functional capacity assessment dated March 29, 2000, performed by neurologist, Dr. María I. Hernández, resulted in findings reflecting some exertional limitations, and occasional postural limitations. (Tr. at 359-66.) The same was affirmed by family physician, Dr. Osvaldo Rivera Marrero. (Tr. at 366.) A psychiatric review technique form dated March 21, 2000,

CIVIL 04-2021 (HL) 5

by clinical psychologist, Orlando E. Reboredo, Ph.D., noted an affective disorder accompanied by psychomotor agitation or retardation, or decreased energy or feelings of guilt or worthlessness, or difficulty concentrating or thinking. (Tr. at 348.) Anxiety was also present. There were generally moderate functional limitations. (Tr. at 352.) A mental residual functional capacity assessment of the same date noted few moderate limitations in understanding and memory, sustained concentration and persistence, social interaction and adaptation. (Tr. at 354-55.) Another psychiatric review technique form dated November 28, 2000, by clinical psychologist Jeanette Maldonado, Ph.D., also noted an affective disorder which was reflected in a depressive disorder related to the back condition. (Tr. at 398.) There were generally mild functional limitations. (Tr. at 406.) Dr. José J. Zamora Alvárez rendered a psychiatric report dated February 2, 2000, which primarily reflected a diagnosis of major depression, single episode, mild to moderate. (Tr. at 344.)

A certificate by Dr. Vyvian D. Silvestry Hernández, a general practitioner, noted that on November 14, 2001, plaintiff was seen for severe lumbosacral pain, administered medication, and referred to his primary treating physician. (Tr. at 482-83.) Her progress notes from March 28, 2001 to April 24, 2001(Tr. 426-33) reflect plaintiff's being treated for lumbosacral pain and referred to his primary treating physician.

At the administrative hearing held on July 16, 2001, vocational expert Dr. Miguel Cruz López testified basing himself on one set of hypothetical situations relying on evidence of record, that plaintiff could perform certain work. At thorough questioning from plaintiff's attorney, also relying on evidence in the record, the expert testified that plaintiff could not perform any work. (Tr. at 43-44.)

CIVIL 04-2021 (HL)                                      6

At the administrative hearing held on February 11, 2003, Dr. Edrick López Enriquez testified in relation to plaintiff's residual functional capacity and environmental limitations, as well as limitations in climbing and descending staircases. (Tr. at 50.) On examination by plaintiff's attorney, he noted plaintiff's relating his painful condition to examining doctors, Dr. Pérez Canabal, who did not find any neurological deficit, and Dr. Ricardo Bonilla Torres. (Tr. at 51-52.) The expert also noted that Dr. Samuel Méndez did find a neurological deficit (Tr. at 55), also noting that the condition can improve or get worse. The attorney referred to Dr. Vyvian Silvestry's notes which reflect that plaintiff's pain had an intensity of 9/10. (Tr. at 57.) While plaintiff's attorney sought to buttress Dr. Silvestry's conclusions, the medical expert found difficulty in giving an opinion as to Dr. Silvestry's conclusion. Later he noted that none of the three neurologists who examined plaintiff, Dr. Méndez, Dr. Bonilla Torres and Dr, Pérez Canabal found that there was a nerve entrapment sufficiently significant for a clinical finding. (Tr. at 62.)

Vocational expert Miguel Cruz testified referring to a hypothetical relying on fact derived from the record. He testified that there were particular jobs that plaintiff could perform considering his physical impairments, Considering moderate non-exertional limitations, the expert made the same finding. (Tr. at 70.) If those were to increase, then he could not work. On examination by plaintiff's attorney, the expert was asked if Dr. Silvestry's description was taken into account. He said there would be limitations in productivity, and plaintiff would not be able to work. (Tr. at 72.)

At the administrative hearing held on March 27, 2003, Dr. José Manuel Pou testified in relation to plaintiff's emotional condition that plaintiff suffered from

CIVIL 04-2021 (HL) 7

depression due to depressive symptoms which do not meet all of the criteria for a diagnosis of a major depressive disorder. (Tr. at 79.) He concluded that his residual capacity in general would only be slightly affected. On examination from plaintiff's attorney, the expert noted that if other axes were considered, including the radiculopathy, stenosis, and spondylosis, including back pain, and plaintiff's having been unemployed due to his pain, then there would be consequences to the stressors. (Tr. at 86.) The expert agreed that plaintiff presented a mixed adaptation process based on a medical report. (Tr. at 88.) The distinction was made between the depressive disorder and the adaptation disorder and its reaction to stressors. (Tr. at 89.) In general, the hypothetical direct examinations resulted in conclusions of not disabled, while the hypothetical questions presented on cross-examination resulted in opinions that plaintiff would not be able to work.

Plaintiff was well represented at the administrative, non-adversary proceedings by attorney Fernando A. Diez, and has submitted a thoughtful and reasoned memorandum in this court detailing the evidence and attacking the manner in which the administrative law judge weighed the evidence, particularly his ignoring evidence of pain under the correct standard, citing regulations published in 1991, reports of treating physicians, and conclusion as to plaintiff's residual functional capacity, given that the arguably bare medical findings that appear in the case are unintelligible to a lay person, particularly in terms of the residual functional capacity. He also attacks the hypothetical questioning of the vocational expert.

The administrative law judge addressed each of plaintiff's impairments and considered the evidence of record in relation to each, attributing varying degrees of

CIVIL 04-2021 (HL)                              8

importance to them depending on their sources, their bases, and the relationship the reports, findings or evidence had to each other.

In relation to the exertional and non-exertional impairments, the administrative law judge adequately weighed the same and applied the correct standards in such weighing process. For example, if the claimant's limitations are exclusively exertional, the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). The GRID, as it is known, consists of a matrix of the claimant's exertional capacity, age, education, and work experience. If the facts of the claimant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a), cited in 20 C.F.R § 416.969. In general, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines is appropriate. See Rose v. Shalala, 34 F.3d 13, 15 (1st Cir. 1994); Sherwin v. Sec'y of Health & Human Servs., 685 F.2d 1, 2-3 (1st Cir. 1982). Even where a nonexertional impairment is significant, the GRID may still be used as "a framework for consideration of how much the individual's work capability is further diminished . . . ." 20 C.F.R. pt. 404 subpt. P. app. 2, § 200.00(e)(2) (1997); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989); Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Thus, if the applicant has nonexertional limitations, such as mental, sensory, or skin impairments, (see 20 C.F.R. pt. 404 subpt. P. app. 2, § 200(e)), that restrict his ability to perform jobs he would

CIVIL 04-2021 (HL)                            9

otherwise be capable of performing, then the GRID is only a "framework to guide [the] decision." 20 C.F.R. § 416.969a(d) (2001). <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001). Using the GRID as a framework for decision-making, the administrative law judge decided that plaintiff could perform certain sedentary work, although not a wide range. 20 C.F.R. § 416.967(a).

The administrative law judge further acknowledged allegations of severe disabling exertional and nonexertional impairments during the covered period. As the administrative law judge noted in his rationale, these were required to be considered under SSR 96-2p, 96-6p, 96-7p and 20 C.F.R. §§ 404.1527, 404.1529 (Tr. at 26); <u>see</u> <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19 (1st Cir. 1986). The factors to be weighed under the correct standard are the following:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); <u>see also</u> SSR 96-7p.

While not citing <u>Avery</u>, or following the above particular outline, the administrative law judge generally addressed the required factors within the rationale as he found it necessary to address them in support of the final decision. (Tr. at 26-27.) The administrative law judge considered the relevant factors and

CIVIL 04-2021 (HL)                              10

explained the grounds for his reasoning, including observations made by medical and vocational sources.

The administrative law judge considered the plaintiff's physician's reports and conclusions. Plaintiff argues in his memorandum of law that greater weight should have been given to the medical evidence from treating sources. However, it is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d at 3; Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1(1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002). The administrative law judge was not required to give the opinions controlling weight. See 20 C.F.R. § 404.1527(d); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003).

In summary, the rationale behind the final decision reflects a difficult balancing and weighing of evidence by the administrative law judge. The administrative law judge weighed evidence of plaintiff's subjective complaints against the evidence in the record, as well as conflicts in the evidence. While not disregarding plaintiff's allegations, the judge weighed them against the lack of medical findings as a whole which would tend to support such allegations. (Tr. at 26.) In reaching the final decision, the administrative law judge considered the testimony of the vocational experts who assumed hypothetical work restrictions, and concluded, based upon certain valid assumptions, that plaintiff could have made a vocational adjustment to perform at least three jobs available in the national economy. The testimonies of the vocational and mental experts as well as the mental residual functional capacity assessment and physical residual functional capacity

CIVIL 04-2021 (HL)                              11

assessments, as well as the psychiatric review technique forms further assisted the administrative law judge in translating the relevant, bare medical data into functional and vocational terms.

The rationale of the administrative law judge is thorough and a reasonable weighing of the evidence does not point to a requirement that the Commissioner find plaintiff to be disabled under the Social Security Act.  Looking at the evidence as a whole, and not to any particular report, document or testimony, and even if I might disagree with the final decision, I cannot find that the Commissioner's decision has failed to comply with the requirements of the substantial evidence rule.  There being no good cause to remand, I recommend that the final decision of the Commissioner be affirmed and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 20th day of September, 2005.

                              S/ JUSTO ARENAS
                         Chief United States Magistrate Judge